**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

STEPHANIE P. BAKER,

   Plaintiff,

             Civil Action 2:15-cv-2687
vs.             Judge James L. Graham
             Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

## REPORT AND RECOMMENDATION

   Plaintiff, Stephanie Baker, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security  ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 8).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.  BACKGROUND

   Plaintiff protectively filed her applications for benefits on May 7, 2012, alleging that she has been disabled since May 7, 2011, due to anxiety, depression, arthritis in her knees and joints in legs irritable bowel syndrome ("IBS"), lung problems, migraines, and acid reflux.  (R. at 227-29, 230-36, 263.)  Plaintiff's applications were denied initially and upon reconsideration.

Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge John Robert Montgomery ("ALJ") held a hearing on February 18, 2014, at which Plaintiff, represented by counsel, appeared and testified. (R. at 35-58.) Eric W. Pruitt, a vocational expert, also appeared and testified at the hearing. (R. at 58–69.) On December 16, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-22.) On June 9, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-5.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she lives with her husband and teenage daughter. (R. at 35.) At the time of the hearing, she was 5'7 ½", weighing 219 pounds. She noted this was more than her normal weight. (R. at 36.) She last worked in 2013 in food preparation in a kitchen. (R. at 37.) She reduced her hours due to pain in her legs and having to take a lot of restroom breaks which "became a problem with the people [she] worked with." (R. at 38.)

When the ALJ asked her what she felt was the major thing that keeps her from being able to work full time, Plaintiff testified that it was "a combination of everything," but that her depression was severe. (R. at 40.) When questioned whether anything else kept her from working, Plaintiff referred to her IBS. (R. at 43-44.) She testified that her IBS "comes and goes." (R. at 43.) She indicated that when she was working she sometimes "had accidents"

where she "couldn't make it to the bathroom quick enough and she would have to leave."  (R. at 44.)  She noted she "pretty much [had] diarrhea every day, but sometimes it's worse than others. I can't control it. . . ."  (*Id.*)  Plaintiff acknowledged that she did not wear special underwear and only occasionally wore a protective pad.  (R. at 45.)  She testified that she is taking medication for her IBS and had 12 inches of her colon removed previously.  (R. at 45.)  Her surgery, which was unrelated to her IBS, was helpful "for a short time," but her symptoms returned.  (*Id.*)

When examined by her counsel, Plaintiff testified that she might have to "go" 20 times in a day.  (R. at 53.)  Plaintiff also testified that on her last job, "I would have to go at least four to five times and then if I was having one of my bad days, I would go more than that." (R. at 54.)

## B.    Vocational Expert Testimony

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs include a cafeteria attendant, preparation cook, package sorting/material handler, and a route delivery clerk.  (R. at 60-61.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  (R. at 62-64.)  Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that the hypothetical individual could perform approximately 331,570 light exertion, unskilled jobs in the national economy such as a housekeeping cleaner, label coder, and a laundry press operator.  (*Id.*)  The VE also testified that if Plaintiff were off task 10% - 15% of the work day she would not be able to sustain employment.  (R. at 65.)  The VE further testified that it would be permissible to use the restroom one or two times prior to a regularly scheduled break "as long as it wasn't excessive."  (R. at 65-66.)

### III.    MEDICAL RECORDS

**A.    Daniel Badenhop, M.D./Damascus Healthcare Center**

On September 9, 2011, Plaintiff complained of abdominal pain that "comes and goes." She reported a previous hernia repair in 2010 and a colon resection in 2009. Dr. Badenhop started Plaintiff on the medication Bentyl, which Plaintiff reported had helped in the past. (R. at 375-76.) Dr. Badenhop's records show Plaintiff was continued on Bentyl though at least March 2012. (R. at 364.)

**B.    Herbert Grodner, M.D.**

Plaintiff was evaluated for disability purposes by Dr. Grodner on August 12, 2012. (R. at 422-29.) Plaintiff reported having 10 bowel movements a day; daily headaches, with both photo and auditory sensitivity which last several hours; and some nausea and vomiting. Plaintiff reported she can walk 20 minutes before she needs to stop. (R. at 426-27.) On examination, Plaintiff exhibited a normal gait and no ambulatory aid was used or needed. Plaintiff was able to partially squat and she alleged a decreased sensation to 2 point discrimination over both lower extremities below her knees. She exhibited no atrophy. She has some decreased range of motion of her lumbar spine and tenderness. (R. at 422-25, 427-28.) Dr. Grodner opined that Plaintiff is capable of most types of sedentary, light and even modified moderate activity. Noting that her IBS could be a problem, Dr. Grodner indicated that he believed the condition could be handled pharmacologically and as long as she is in a position where she is close to a bathroom, but suggested that "[t]his would have to be attempted on a trial and error basis." (R. at 428-29.)

### C. State Agency Evaluations

On September 5, 2012, state agency physician, Eli Perencevich, D.O., reviewed the record and assessed Plaintiff's physical functioning capacity. (R. at 79-81.) Dr. Perencevich found that Plaintiff could perform light work activity with postural limitations including never climb ladders, rope or scaffolds but could occasionally kneel, crouch, crawl, and climb ramps and stairs. (R. at 79-80.) Dr. Perencevich also found that due to Plaintiff's IBS, she required close and unlimited restroom access. (R. at 81.) On December 3, 2012, state agency physician, Leslie Green, M.D., reviewed the record upon reconsideration and essentially affirmed Dr. Perencevich's assessment. (R. at 111-13.)

### D. Douglas Skura, M.D.

Plaintiff was seen by Dr. Skura in November 2012 for pain in her right leg. When reviewing her symptoms, Plaintiff complained of abdominal pain, constipation, diarrhea, gastroesophageal reflux and nausea. (R. at 468-69.)

### E. Memorial Hospital of Union County

Plaintiff presented to the emergency room in January 2013, complaining of "flu-like" symptoms. Two weeks prior, she complained of diarrhea for multiple days in a row that had since resolved. (R. at 489.) Plaintiff was treated for her chest pain with bronchitis. (R. at 491-92.)

Plaintiff presented to the emergency room in October 2013, with abdominal pain that had been coming and going over several days and getting worse. Plaintiff reported that her pain starts within an hour after meals. She has had some nausea, vomiting and diarrhea. Her pain seems to be in the general vicinity of the right upper quadrant but radiates towards the epigastic

area.  She denies any heavy alcohol use.  The emergency room physician noted her history of endometrial cysts that had extended into her colon which resulted in a colon resection.  (R. at 587.)  Plaintiff's abdominal examination was benign and her CT of her abdomen was negative. (R. at 595.)

### F.      James Bove, III, D.O.

Plaintiff presented to Dr. Bove twice in October 2013, with abdominal pain, located in the right upper quadrant, which was radiating to her back.  She described her pain as chronic and ongoing.  Her pain is triggered by food.  She reported eating a fatty meal that triggered an episode of abdominal pain and diarrhea.  Pertinent findings include diarrhea, nausea and vomiting.  (R. at 873, 871.)  Plaintiff was diagnosed with biliary dyskinesia and Dr. Bove suggested a cholecystectomy (gallbladder removal).  (R. at 872.)  Plaintiff underwent the cholecystectomy surgery on November 7, 2013.  When seen for post-op by Dr. Bove on December 2, 2013, Plaintiff was recovering well.  (R. at 869.)

### IV.  THE ADMINISTRATIVE DECISION

On December 16, 2014, the ALJ issued his decision.  (R. at 7-22.)  The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2017.  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet or

gainful activity since May 7, 2011, the alleged onset date. (R. at 12.) The ALJ found that

Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine;

osteoarthritis of the knees; irritable bowel syndrome; depressive disorder; anxiety disorder; and

post-traumatic stress disorder. (*Id.*) He further found that Plaintiff did not have an impairment

or combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.) At step four of the

sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 2 hours at a time for a total of 6 hours in an 8 hour workday; sit 2 hours at a time for a total of 6 hours in an 8 hour workday; occasional stooping, kneeling, crouching, crawling, and climbing of stairs; no climbing of ladders, ropes or scaffolds; must avoid concentrated exposure to vibration and hazards; should have close restroom access; mentally, simple, routine tasks that do not change throughout the workday; no fast paced work; no strict production quotas; and no more than occasional and superficial contact with others.

(R. at 16.) In reaching this determination, the ALJ accorded "great but not controlling weight"

to the opinions from the state agency medical consultants, Drs. Perencevich and Green, as to

Plaintiff's exertional and postural limitations. The ALJ, however, afforded "little weight" to

their opinion as to Plaintiff's allegations of uncontrolled fecal incontinence, finding this

---

> equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

limitation was not supported by the medical evidence. (R. at 19.) The ALJ found, that while Plaintiff alleged fecal incontinence, there is no indication of frequent emergency department visits, weight loss or even consistent specialized treatment with a gastrointestinal specialist. The ALJ also found that treatment notes consistently indicate that Plaintiff denied having excessive diarrhea, contrary to testimony of four to five loose bowel movements a day. Moreover, the ALJ relied on Dr. Grodner's assessment that Plaintiff's diarrhea could be handled pharmacologically and as long as she is in a position where she is close to a bathroom facility. (R. at 18.)

Relying on the VE's testimony, the ALJ concluded that even though Plaintiff is unable to perform her past relevant work, she can perform jobs that exist in significant numbers in the national economy. (R. at 21-22.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 22.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ improperly assessed her RFC. Specifically, Plaintiff contends that in his RFC assessment, the ALJ included a requirement for close restroom access but specifically rejected the inclusion of an additional requirement of unlimited restroom access as indicated by state agency medical consultants. Within her contention of error, Plaintiff maintains that the ALJ's finding that she was not credible as it relates to her reports of fecal incontinence is not supported by substantial evidence. Plaintiff further argues that the ALJ came "uncomfortably close to cherry-picking the evidence to support his conclusion that the need for unlimited restroom access is not required." (ECF No.

12).   Thus, the chief issue in this case is whether the ALJ properly found that Plaintiff did not require unlimited restroom breaks, which turns on whether the he properly assessed Plaintiff's credibility regarding fecal incontinence.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).  This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)).  Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531.  Furthermore, the ALJ's decision on credibility must be

10

"based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996)[2]; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

---

[2]SSR 16-3p, which became effective March 28, 2016, superceded and rescinded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1. Because SSR 16-3p does not include explicit language to the contrary, it is not to be applied retroactively. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec*., 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541–42 (6th Cir. 2007) (declining to retroactively apply a newly effective Social Security Ruling in the absence of language reflecting the Administration's intent to apply it retroactively).

The ALJ determined that Plaintiff has an underlying medically determinable impairment that could reasonably cause some symptomatology but that the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by Plaintiff. (R. at 16-17.) With respect to Plaintiff's IBS and alleged fecal incontinence, the ALJ concluded as follows when assessing Plaintiff's credibility:

> The claimant's allegations of debilitating pain and fecal incontinence are inconsistent with the generally mild to moderate findings from imaging and physical examinations, an unimpressive medical treatment history and high functioning activities of daily living that include work activity throughout most of her alleged period of disability.
> . . .
>
> While the claimant alleged fecal incontinence, there is no indication of frequent emergency department visits, weight loss or even consistent specialized treatment with a gastrointestinal specialist. In fact, treatment notes repeatedly and consistently indicate that the claimant denied having excessive diarrhea, contrary to testimony of four to five loose bowel movements a day. Moreover, Dr. Grodner indicated that claimant's diarrhea could be handled pharmacologically and as long as she is in a position where she is close to a bathroom facility. The residual functional capacity finding limits claimant to work with close restroom access.

(R. at 17, 18, exhibit references omitted.)

Plaintiff contends that the ALJ's findings that she was not credible as it relates to her reports of fecal incontinence as well as his rejection of the opinions of Drs. Perencevich and Green, the state agency medical consultants, indicating a limitation to unlimited restroom access were not supported by the evidence. The Undersigned concludes that the ALJ reasonably found that Plaintiff did not require a limitation of unlimited restroom access in the RFC determination and that substantial evidence supports this conclusion.

Plaintiff first faults the ALJ for mischaracterizing her testimony that she had four to five loose bowel movements a day. Plaintiff in fact testified that she might have to move her bowels

20 times in a day. (R. at 53.) She indicated that when she was working part-time, for four-to-five hours per day, she had to go to the restroom at least four to five times, or more on a bad day. (R. at 54.) Although the ALJ stated that Plaintiff testified she had four-to-five loose bowel movements per day without acknowledging that this was her testimony regarding her bowel habits when she was working part-time, he clearly considered Plaintiff's complaints of fecal incontinence. Based on the evidence of record, the ALJ found that Plaintiff's allegations did not warrant unlimited restroom breaks.

The issue of whether Plaintiff required unlimited restroom breaks turned on the ALJ's consideration of Plaintiff's credibility. The ALJ found Plaintiff's statements less than fully credible because he concluded that the medical evidence did not support the severity of her complaints. The ALJ's finding that Plaintiff's complaints were not entirely credible is supported by substantial evidence. As set forth above, the ALJ noted that the treatment notes undermined Plaintiff's allegations that fecal incontinence required unlimited restroom breaks. Inconsistency is a proper basis upon which to discount a claimant's credibility. *Walters*, 127 F.3d at 531. ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."); *see* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

The ALJ referred to numerous treatment records in which Plaintiff denied having excessive diarrhea. Plaintiff insists the ALJ's reasoning was flawed in this regard, arguing that the records to which he referred were primarily records from an anti-coagulation clinic where she was having blood drawn in connection with her Coumadin therapy. Plaintiff, however,

points to no authority that would preclude the ALJ from considering this evidence.  And, the records do in fact support the ALJ's rationale.  If Plaintiff was experiencing such frequent episodes of diarrhea necessitating unlimited restroom access, she likely would not have denied having diarrhea during these or any  medical appointments.

Plaintiff next contends that the ALJ ignored other more detailed records in which Plaintiff complained of diarrhea and essentially cherry-picked the evidence in order to substantiate his RFC determination.  The records to which Plaintiff refers, however, fail to demonstrate that her diarrhea was *uncontrolled* during the relevant time period.  By way of example, Plaintiff refers to two medical records from 2011.  In one, Plaintiff complained of diarrhea for one month; in the other record, she complained of diarrhea for one-and-a-half weeks.  (Pl's Stmt. of Errs., at 8, referring to R. at 375 and 346.)  Plaintiff also refers to two records from 2012 in which she reported episodic diarrhea, including her statement to Dr. Grodner, the consultative examiner, that she experienced 10 bowel movements per day. Plaintiff refers to four treatment records in 2013, each of which refers simply to complaints of episodic diarrhea and abdominal pain.   Plaintiff refers to a single record from an office visit in 2014 regarding her leg pain, where it was noted that she had "diarrhea vs. constipation."  While the records to which Plaintiff refers do  document instances of diarrhea, they do not support her allegations of persistent, uncontrolled diarrhea requiring a need for unlimited restroom breaks. These records do not undermine the ALJ's credibility assessment.  Furthermore, the ALJ was "not required to analyze the relevance of each piece of evidence individually.  Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'"  *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20

14

C.F.R. § 404.953); *accord Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

Substantial evidence supports the ALJ assessment of Plaintiff's allegations of frequent episodes of diarrhea.  Moreover, as the Commissioner points out, the record contains numerous additional medical records the ALJ did not discuss in which Plaintiff denied having diarrhea or excessive diarrhea.  (Def's Mem. in Opp, at p. 8, citing R. at 311, 401, 411, 441, 454, 520, 529, 698, 773, 780, 784, 787, 791, 854.)  Accordingly, the Undersigned concludes that substantial evidence supports the ALJ's finding that Plaintiff did not consistently complain of excessive diarrhea during the period at issue, and thus did not require a limitation of unlimited restroom use.

Plaintiff argues that the ALJ's credibility determination is erroneous insofar as he reasoned that Plaintiff had not made frequent emergency room visits to treat her condition.  She maintains that this explanation amounts to little more than making a credibility determination based on his own intuition about what treatment is necessary.  Plaintiff contends that no medical evidence in the record suggests that emergency room visits would be necessary to treat fecal incontinence.  While the Undersigned agrees with Plaintiff in this regard, the ALJ provided other justifications for his credibility finding.  These reasons are supported with substantial evidence, Thus, any *de minimus* error by the ALJ in making this observation is harmless.

Along these lines, however, although she does not mention it, the ALJ also considered that Plaintiff did not seek treatment from a gastrointestinal specialist.  The ALJ was within his discretion to consider that if Plaintiff experienced uncontrollable diarrhea as she alleged, she

probably would have consulted a specialist.  *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

The ALJ further considered Plaintiff's daily activities, including the fact that, despite her alleged inability to stand or walk for extended periods or to be around other people, she worked throughout most of the period of disability and never requested any kind of work restriction.  (R. at 19.)  The ALJ properly considered Plaintiff's activities of daily living in assessing her credibility.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (ALJ may consider claimant's daily activities in evaluating credibility); SSR-96-7p.  The ALJ's consideration of credibility relating to Plaintiff's other complaints of pain informed his overall credibility determination, which in turn supports his specific credibility finding regarding Plaintiff's allegation of frequent fecal incontinence.

Finally, Plaintiff argues that the ALJ erred in giving little weight to the opinions of the state agency medical consultants, Dr. Perencevich and Dr. Green, that Plaintiff required unlimited restroom access.[3]  The ALJ, however, gave great weight to several aspects of their opinions and only gave little weight to the limitation of unlimited restroom access because he found that Plaintiff's allegations of uncontrolled fecal incontinence were not supported by the

_____

[3]Within this contention, Plaintiff also contends that the ALJ "attempts to bolster" his decision to give little weight to these opinions by giving "great weight" to the opinion of Dr. Grodner.  Plaintiff, however, is conflating different aspects of the ALJ's decision.  The ALJ gave great weight to Dr. Grodner's opinion that Plaintiff is capable of most types of sedentary, light and even modified moderate activity.  (R. at 20.)  With respect to Plaintiff's IBS, the ALJ referred to Dr. Grodner's opinion that her condition could be controlled pharmacologically as support for his reasons to discount the little weight he assigned to the state agency consultants' suggested limitation about unlimited restroom access.  (R. at 19.)

medical evidence.  Because the ALJ did not find Plaintiff's allegations of fecal incontinence credible, he was not required to accept the state agency doctors' limitations that relied on them. The ALJ reasonably found Plaintiff's allegations were inconsistent with the medical records, and thus, reasonably gave little weight to the medical opinions regarding those allegations. *See* 20 C.F.R. at §§ 404.1520(a)(3), 404.1529, 416.920(a)(3), 416.929 (disability determination is made after reviewing all relevant evidence that affects an individual's ability to perform basic work activities).

The ALJ's explanation of his decision regarding Plaintiff's credibility is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.  Here, the ALJ considered numerous factors and the entire record in evaluating the overall credibility of Plaintiff's allegations. Because the ALJ's finding was reasonable and supported by substantial evidence, the Undersigned recommends that his determinations should be affirmed.

## VII.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

17

## VIII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  August 16, 2016                    ____/s/ *Elizabeth A. Preston Deavers*____
                                          ELIZABETH A. PRESTON DEAVERS
                                          UNITED STATES MAGISTRATE JUDGE